# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| AMERIJET INTERNATIONAL, INC., | : | | |
| | : | | |
| Plaintiff, | : | | |
| | : | | |
| v. | : | Civil Action No.: | 1:13-cv-01405 (RC) |
| | : | | |
| UNITED STATES DEPARTMENT OF | : | Re Document No.: | 15 |
| HOMELAND SECURITY, | : | | |
| TRANSPORTATION SECURITY | : | | |
| ADMINISTRATION, and JOHN S. | : | | |
| PISTOLE, in his official capacity as | : | | |
| Administrator of the TRANSPORTATION | : | | |
| SECURITY ADMINISTRATION, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

## I. INTRODUCTION

Plaintiff, Amerijet International, Inc. ("Amerijet"), has brought suit under the

Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* (the "APA"), the Fifth Amendment of the

United States Constitution, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, against

the Department of Homeland Security (the "DHS"), the Transportation Security Administration

(the "TSA"), and John S. Pistole, in his official capacity as Administrator of the TSA

(collectively, "Defendants"), alleging an unlawful pattern or practice by the TSA in connection

with the security screening procedures for all-cargo aircraft bound for the United States.  Before

the Court is Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (the

"Motion").  Upon consideration of the pleadings and the relevant legal authorities, the Court

concludes that it lacks subject matter jurisdiction and grants the Motion.  Further, the Court

transfers this action to the U.S. Court of Appeals for the District of Columbia Circuit pursuant to 28 U.S.C. § 1631.

## II. THE STATUTORY AND REGULATORY SCHEME

In the aftermath of the terrorist attacks of September 11, 2001, Congress created the TSA to increase protections for all modes of transportation and, in particular, charged the TSA's Administrator with overall responsibility for civil aviation security. *See* 49 U.S.C. § 114(d). Congress further mandated that the TSA implement a system "to screen, inspect, or otherwise ensure the security of all cargo that is to be transported in all-cargo aircraft in air transportation." *Id.* § 44901(f). In furtherance of Congress's directive, the TSA requires "full all-cargo" aircraft operators to adopt and implement a security program known as a Full All-Cargo Aircraft Operator Standard Security Program ("FACAOSSP").[1] *See* 49 C.F.R. §§ 1544.101(h), (i); Compl., Sept. 16, 2013, ECF No. 1, at ¶ 21. It is undisputed that Amerijet is a full all-cargo operator, and it therefore must operate in accordance with a TSA-approved FACAOSSP. *See* Compl., ECF No. 1, at ¶¶ 26, 30.

Each all-cargo aircraft operator's security program must describe the procedures, facilities, and equipment employed to "prevent or deter the carriage of any unauthorized persons, and any unauthorized explosives, incendiaries, and other destructive substances or items in cargo onboard an aircraft[,]" and the TSA must approve the security program. 49 C.F.R. § 1544.205(a). In addition, each all-cargo aircraft operator must comply with supplemental requirements known as "security directives," which are issued when the TSA "determines that

---

[1]     "Full all-cargo" aircraft operators are those operators that conduct non-passenger flight operations using aircraft with a maximum certificated takeoff weight of more than 45,500 kilograms. *See* 49 C.F.R. § 1544.101(h).

additional security measures are necessary to respond to a threat assessment or to a specific

threat against civil aviation." *Id.* § 1544.305(a).

The TSA also has a process through which all-cargo aircraft operators may request an

amendment to their approved security program. *See id.* § 1544.105(b). If an aircraft operator

believes it is "unable to implement the measures in [a] [s]ecurity [d]irective," the operator is

entitled to "submit proposed alternative measures" for the TSA's review and approval. *Id.* §

1544.305(d). The TSA has discretion to approve a proposed alternative procedure if the agency

"determines that safety and the public interest will allow it, and the proposed amendment

provides the level of security required under [49 C.F.R. Part 1544]." *Id.* § 1544.105(b)(3).

The TSA issued the security directive about which Amerijet now complains in the wake

of a 2010 Yemen-based terrorist plot to detonate explosive devices on board two all-cargo

aircraft traveling inbound to the United States. Compl., ECF No. 1, at ¶ 23. This directive,

entitled Security Directive 1544-11-04 (the "Security Directive"), requires full all-cargo aircraft

operators to employ certain additional screening requirements to "detect and deter unauthorized

explosives in cargo."[2] Defs.' Mem. in Supp., Dec. 10, 2013, ECF No. 15-1, Ex. 1 at 1. Certain

classes of cargo are not subject to these additional screening requirements if the Security

Directive's exemption criteria are satisfied. Compl., ECF No. 1, at ¶¶ 17, 25.

Finally, within this civil aviation regulatory scheme, the TSA is empowered to undertake

investigation and enforcement actions to ensure compliance with the all-cargo aircraft security

requirements, including the Security Directive. *See* 49 U.S.C. § 114(f), (v); 49 C.F.R. Part 1503;

49 C.F.R. § 1544.3. For example, if an investigation reveals that a regulated all-cargo aircraft

---

[2]     The Security Directive was superseded by Security Directive 1544-11-04A,
effective May 27, 2012, which in turn was superseded by Security Directive 1544-11-04B,
effective on May 27, 2013. Compl., ECF No. 1, at ¶ 24. Each of the Security Directives in the
1544-11-04 series is substantially identical to the Security Directive issued in May 2011. *Id.*

operator has likely committed a violation of an applicable requirement but the operator has taken corrective measures, the TSA may take administrative, non-adjudicative action by issuing a Warning Notice or Letter of Correction.[3]  *See* 49 C.F.R. § 1503.301.  But if corrective action is not taken, or if the TSA determines that the alleged violation requires the assessment of a civil penalty, the agency may commence an enforcement proceeding by issuing a Notice of Proposed Civil Penalty.  *See id.* §§ 1503.301(b)(2), 1503.413(a)-(b).  The operator then may elect to pay the penalty, request an informal conference with an agency attorney, or request a formal hearing before an Administrative Law Judge ("ALJ").  *See id.* §§ 1503.413(c), 1503.427.  If the operator fails to respond to a Notice of Proposed Civil Penalty or fails to resolve the alleged violation after an informal conference, the TSA may issue a Final Notice of Proposed Civil Penalty and Order, *see id.* § 1503.417, after which the operator may elect to pay the penalty or request a formal hearing before an ALJ.  *See id.* § 1503.419(a)-(b).

### III.  FACTUAL BACKGROUND

Turning to the dispute before this Court, Amerijet is a Florida-based full all-cargo aircraft operator required to have a TSA-approved security program under the above-described statutory and regulatory scheme.  Compl., ECF No. 1, at ¶¶ 26, 30.  Amerijet transports cargo between the United States and various locations in the Caribbean and Latin America, and its operations are based at Miami International Airport.  *Id.* ¶¶ 4, 27.

---

[3]     A "Warning Notice" includes "facts and information about the incident or condition and indicates that it may have been a violation." 49 C.F.R. § 1503.301(b)(1).  A "Letter of Correction" confirms that the TSA has determined the incident or condition constitutes a violation of an applicable requirement and sets forth the "necessary corrective action the alleged violator has taken or agrees to take." *Id.* § 1503.301(b)(2).  "The issuance of a Warning Notice or Letter of Correction is not subject to appeal[.]" *Id.* § 1503.301(c).

In the Complaint, Amerijet alleges that in July 2011, two months after the TSA Administrator issued the Security Directive, it requested and received permission to utilize two adjustments to the Security Directive's screening requirements. *Id.* ¶ 32. After an inspection at one of Amerijet's Caribbean locations in late 2011, the TSA issued a letter of investigation informing Amerijet that it was in noncompliance with the Security Directive and the approved alternate security screening procedures.[4] *Id.* ¶ 34. Amerijet disputed the TSA's determination in February 2012, asserting in a letter that it was exempt from the Security Directive's cargo screening requirements under its interpretation of the regulations. *Id.* ¶ 35. The TSA disagreed with Amerijet's interpretation and issued a Notice of Proposed Civil Penalty in November 2012 that charged the operator with violating the TSA security requirements by failing to conduct a full direct physical screening of the cargo at issue during the late 2011 inspection. *Id.* ¶ 44.

At a December 2012 informal conference with the TSA that Amerijet requested, the TSA explained that Amerijet was not exempt from the requirement to screen all cargo covered by the Security Directive, despite its interpretation to the contrary. Compl., ECF No. 1, at ¶ 44. The TSA subsequently issued a Final Notice of Proposed Civil Penalty and Order with respect to the

---

[4] Certain facts are excluded from Amerijet's Complaint and other relevant filings in this action because the missing or redacted information constitutes Sensitive Security Information ("SSI") pursuant to 49 U.S.C. § 114(r) and 49 C.F.R. Parts 15 and 1520. As Defendants explain, SSI is "information obtained or developed in carrying out security under authority of the Aviation and Transportation Security Act," the disclosure of which has been determined to be "detrimental to the security of transportation." 49 U.S.C. § 114(r). Pursuant to these regulations, the following were deemed SSI and thus could not be publicly released: the TSA security directives and other security-related orders; aircraft operator and air cargo security programs; security inspection and investigative information, including "details of any security inspection or investigation of an alleged violation of aviation … security requirements of Federal law that could reveal a security vulnerability"; and "Security screening information," including "[a]ny procedures … instructions, and implanting guidance pertaining thereto, for screening of … cargo that is conducted by the Federal Government or any other authorized person." 49 C.F.R. §§ 1520.5(b)(1)-(2), 1520.5(b)(6), 1520.5(b)(9); *see also* Defs.' Mem. in Supp., ECF No 15-1, at 12 n.4. Nonetheless, the Court finds that there is ample factual information available in the public record to decide the Motion.

late 2011 inspection. *Id.* ¶ 79. In response, Amerijet requested a formal administrative hearing as permitted by the TSA regulations. *Id.* At this administrative proceeding, which is pending,[5] Amerijet once again asserted that it is entitled to an exemption from the cargo screening procedures in the Security Directive. *Id.* ¶¶ 80-82.

Separately, in an effort to resolve the ongoing dispute, the TSA suggested that Amerijet submit an application for additional alternative procedures if it continued to desire a broader exemption from the Security Directive. *Id.* ¶ 54. In February 2013, Amerijet submitted a letter to the TSA requesting several alterations to its existing security procedures, which the TSA denied in May 2013. *Id.* ¶¶ 55-57. Amerijet then petitioned the U.S. Court of Appeals for the District of Columbia Circuit to review the TSA's denial of this request. *See Amerijet Int'l, Inc. v. John Pistole*, Case No. 13-1176 (D.C. Cir. filed May 15, 2013).[6]

In May 2013, Amerijet also applied for an extension of its two existing alternative procedures to the Security Directive. Compl., ECF No. 1, at ¶ 68. The TSA denied Amerijet's request for an extension of both of these alternative procedures in July 2013, but the agency allowed Amerijet to resubmit its request. *Id.* ¶¶ 71-72. Amerijet submitted its second application for alternate procedures on August 9, 2013, *id.* ¶ 73, and the operator continues to engage in discussions with the TSA about this request. *See* Defs.' Mem. in Supp., ECF No. 15-1, at 15-16. Relevant to the dispute before this Court, Amerijet alleges that the TSA has granted its competitors' requests for similar alternate procedures, including permitting competitors to

---

[5]     The administrative proceeding was stayed pending resolution of Amerijet's interlocutory appeal to the TSA Administrator of the ALJ's denial of its Motion for Decision. *See* Defs.' Mem. in Supp., ECF No. 15-1, Ex. 2 (Order Staying Proceedings Pending Resolution of Respondent's Interlocutory Appeal, *In the Matter of Amerijet Int'l, Inc.*, No. 13-TSA-0052 (Oct. 29, 2013)).

[6]     Oral argument in the court of appeals matter was held on March 27, 2014. *See Amerijet Int'l, Inc. v. John Pistole*, Case No. 13-1176 (D.C. Cir. filed May 15, 2013).

utilize the Security Directive's cargo screening exemptions for which the TSA determined Amerijet was ineligible.  Compl., ECF No. 1, at ¶¶ 87, 89.

In the meantime, the TSA continued to monitor Amerijet's compliance with the aviation security requirements throughout the Caribbean and Latin America.  *See, e.g.*, *id.* ¶¶ 38, 58, 74. Several of these inspections revealed that Amerijet had committed additional violations of the Security Directive.  *Id.* ¶¶58, 61.  Amerijet responded to each TSA investigative action by asserting its "good faith belief that it was in full compliance with the [S]ecurity [D]irective through certain exemptions clearly applicable."  *Id.* ¶ 61.  Disagreeing each time, the TSA issued to Amerijet an unspecified number of Notices of Proposed Civil Penalty for violations of the Security Directive.  *Id.* ¶¶ 66, 78.

On September 16, 2013, Amerijet filed a Complaint in this Court alleging that the TSA's interpretation and enforcement of the aviation screening requirements constituted a pattern or practice of conduct that was arbitrary and capricious, in bad faith, contrary to law, and in violation of Amerijet's Fifth Amendment Equal Protection rights.  *Id.* ¶¶ 95, 97.  Amerijet seeks declaratory relief and a permanent injunction enjoining the TSA from enforcing, applying, or implementing the security measures and program in the allegedly unconstitutional and unlawful manner.  Compl., ECF No. 1, at ¶¶ 104, 108, 112, 117.  Defendants moved to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  *See* Defs.' Mem. in Supp., ECF No. 15-1.  Specifically, Defendants argue that Amerijet's claims cannot proceed in this Court because, pursuant to 49 U.S.C. § 46110(a), exclusive jurisdiction to review the TSA's aviation security orders rests with the federal courts of appeals.[7]  *See id.* at 17-20.

---

[7]        Alternatively, Defendants argue that Amerijet's claims are not actionable under the ripeness doctrine and the APA's final agency action requirement.  *See* Defs.' Mem. in Supp.,

## IV. LEGAL STANDARD

"'Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.'" *Janko v. Gates*, 741 F.3d 136, 139 (D.C. Cir. 2014) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Morrow v. United States*, 723 F. Supp. 2d 71, 76 (D.D.C. 2010). A court must accept all factual allegations in the complaint as true and give the plaintiff the benefit of all reasonable inferences from the facts alleged. *See Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005) (citations omitted). A court may dismiss a case for lack of subject matter jurisdiction only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Richardson v. United States*, 193 F.3d 545, 549 (D.C. Cir. 1999) (citation and quotation omitted). When a court's subject matter jurisdiction is called into question, it may consider matters outside the pleadings to ensure that it has the power to hear the case. *See Jerome Stevens Pharms.*, 402 F.3d at 1253.

## V. ANALYSIS

Defendants move to dismiss the Complaint under Rule 12(b)(1) on the ground that Amerijet challenges a final TSA order — the Security Directive — and thus, pursuant to 49 U.S.C. § 46110(a), the federal courts of appeals have exclusive jurisdiction to hear these claims. *See* Defs.' Mem. in Supp., ECF No. 15-1, at 18-19. Section 46110(a) states, in relevant part:

---

ECF No. 15-1, at 30-35. Because the Court concludes that it lacks subject matter jurisdiction, it does not address Defendants' additional arguments.

> [A] person disclosing a substantial interest in an order issued by the Security of
> Transportation (or the Under Secretary of Transportation for Security with respect to
> security duties and power designated to be carried out by the Under Secretary
> or the Administrator of the Federal Aviation Administration with respect to aviation
> duties and powers designed to be carried out by the Administrator) in whole or in part
> under this part, part B, or subsection (l) or [(r)]7 of section 114 may apply for review of
> the order by filing a petition for review in the United States Court of Appeals for the
> District of Columbia Circuit or in the court of appeals of the United States for the circuit
> in which the person resides or has its principal place of business[.][8]

49 U.S.C. § 46110(a). Section 46110(c) further proscribes that the courts of appeals have

"exclusive jurisdiction to affirm, amend, modify or set aside any part of [such an] order." *Id*. §

46110(c).

In response, Amerijet rightly appears to concede that this Court lacks jurisdiction if the

Complaint seeks review of the Security Directive. The plaintiff instead argues that § 46110(a)

does not apply because the Complaint presents a broader challenge to the TSA's conduct. *See*

Pl.'s Mem. in Opp'n, Jan. 12, 2014, ECF No. 19-1, at 5-6. According to Amerijet, the

Complaint "challenges the manner in which TSA has investigated, informed (or failed to inform)

regarding TSA requirements, and pursued alternative procedures and preliminary enforcement

proceedings over an 18-month period against Amerijet." *Id*. at 5. Amerijet further asserts that

---

[8]     Section 46110(a) refers to "the Under Secretary of Transportation for Security
with respect to security duties and powers designated to be carried out by the Under Secretary."
When the TSA was created, Congress appointed the Under Secretary of Transportation for
Security as the head of the agency. *See* 49 U.S.C. § 114(b)(1). In 2002, the TSA was transferred
from the Department of Transportation to the Department of Homeland Security. *See* 6 U.S.C.
§§ 203(2), 551(d). Statutory references to the "Under Secretary of Transportation for Security"
therefore are deemed to refer to the TSA and the TSA's Administrator. *See id.* §§ 552(d), 557;
49 C.F.R. § 1500.3. Accordingly, courts have recognized that § 46110(a) applies to orders
issued by the TSA. *See, e.g.*, *Gilmore v. Gonzales*, 435 F.3d 1125, 1133-34 (9th Cir. 2006);
*Roberts v. Napolitano*, 798 F. Supp. 2d 7, 10-11 (D.D.C. 2011); *In re Sept. 11 Lit.*, 236 F.R.D.
164, 174 (S.D.N.Y. 2006).

In addition, the judicial review provision of § 46110(a) was previously codified as 49
U.S.C. App. § 1486, which was the statute at issue in some earlier cases. However, "[t]he
statutes do not materially differ." *Ass'n of Citizens to Protect & Pres. The Env't v. FAA*, 287 F.
App'x 764, 766 n.3 (11th Cir. 2008).

"[s]uch processes and procedures do not constitute 'orders' within the meaning [] § 46110," and as such, § 46110(a) does not apply. *Id*. at 5-6.

*     *     *

To determine whether this Court possesses subject matter jurisdiction within the framework of § 46110(a), it must answer two questions. First, does the Security Directive constitute a final "order" within the meaning of § 46110(a)? If the Security Directive is a final order, the second question is: does Amerijet assert challenges that require direct review of, or are inescapably intertwined with, the Security Directive such that this Court lacks subject matter jurisdiction to hear the claims? The Court answers affirmatively to both questions and therefore concludes that it lacks subject matter jurisdiction to consider the merits of Amerijet's Complaint.

### A. The Security Directive Is A Final Order Under § 46110(a)

Section 46110(a) is implicated only if a final TSA "order" is involved.[9] *See CSI Aviation Servs., Inc. v. Dep't of Transp.*, 637 F.3d 408, 411 (D.C. Cir. 2011) (explaining, in the context of applying § 46110(a), that "[t]o avoid premature intervention in the administrative process, our review of agency action has been judicially restricted to review of final agency orders" (citation and quotation omitted)). Within the framework of § 46110(a), "the term 'order' … should be read expansively." *Safe Extensions, Inc. v. FAA*, 509 F.3d 593, 598 (D.C. Cir. 2007) (citation and quotation omitted); *see also Avia Dynamics, Inc. v. FAA*, 641 F.3d 515, 520 (D.C. Cir. 2011) (stating that the term "order" in § 46110(a) is broadly construed "because of its function in providing for judicial review"). Although § 46110 does not define "order," the U.S. Court of

---

[9]     Amerijet does not argue that the Security Directive is not an order; instead, the plaintiff only asserts that the TSA's alleged pattern and practice of unlawful behavior does not constitute an order under § 46110(a). Pl.'s Mem. in Opp'n, ECF No. 19-1, at 5. Amerijet's argument is irrelevant, however, if this Court finds that the Security Directive is an order and that the plaintiff's claims constitute a direct challenge to, or are inescapably intertwined with, the directive.

Appeals for the District of Columbia Circuit has provided a test for determining whether an agency action constitutes a final order under the statute:

> To be deemed final and thus reviewable as an order under 49 U.S.C. § 46110, an agency disposition must mark the consummation of the agency's decisionmaking process, and it must determine rights or obligations or give rise to legal consequences.

*Safe Extensions*, 509 F.3d at 598 (citation and internal quotations omitted).

Here, the Security Directive "'mark[s] the 'consummation' of the agency's decisionmaking process'" because it is "'not … of a merely tentative or interlocutory nature.'" *Village of Bensenville v. FAA*, 457 F.3d 52, 68 (D.C. Cir. 2006) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). The additional security measures pronounced in the Security Directive are mandatory and must be immediately implemented by each all-cargo aircraft operator with an approved TSA security program. *See* 49 C.F.R. § 1544.305(b); *see also* Defs.' Mem. in Supp., ECF No. 15-1, Ex. 1 at 7. The Security Directive is not a draft or proposal but rather establishes uniform standards and procedures that all-cargo aircraft operators must implement. *See City of Dania Beach v. FAA*, 485 F.3d 1181, 1188 (D.C. Cir. 2007) (concluding that a letter represented the consummation of agency decision making because it was not "tentative, open to further consideration, or conditional on future agency action"[;] instead, it provided "marching orders"); *Gilmore v. Gonzales*, 435 F.3d 1125, 1133 (9th Cir. 2006) (concluding that a TSA security directive was a final order within the meaning of § 46110(a) because it has a "direct and immediate effect on the daily business of the party asserting wrongdoing" and "envisions immediate compliance" (internal quotation omitted)).

The Security Directive also "determine[s] rights or obligations [and] give[s] rise to legal consequences," *Safe Extensions*, 509 F.3d at 598 (citation and internal quotation omitted), because it demands additional security measures that all-cargo aircraft operators transporting

cargo into the United States must follow under the threat of penalty for noncompliance.  *See* 49 C.F.R. § 1544.305(b).  To wit, if an all-cargo aircraft operator does not comply with the procedures outlined in the Security Directive, the TSA may take enforcement actions, such as imposing civil penalties.  *See* 49 U.S.C. § 114(v); 49 C.F.R. §§ 1503.301(b)(2); 1503.413(a)-(b).  Accordingly, the Security Directive plainly constitutes a final order within the meaning of § 46110(a).

### B.  Amerijet's Claims Are Inescapably Intertwined With The Security Directive

"It is beyond dispute that Congress 'may prescribe the procedures and conditions under which, and the courts in which, judicial review of administrative orders may be had.'"  *United Transp. Union v. Norfolk & W. Ry. Co.*, 822 F.2d 1114, 1119-20 (D.C. Cir. 1987) (quoting *City of Tacoma v. Taxpayers*, 357 U.S. 320, 336 (1957)).  Here, Congress conferred exclusive jurisdiction on the courts of appeals to review challenges to final orders within the meaning of § 46110(a).  The next crucial question therefore is whether Amerijet seeks review of a final order under § 46110(a) — *i.e.*, the Security Directive — or if Amerijet is mounting a broader challenge that falls outside § 46110(a).

#### 1.  The Inescapably-Intertwined Doctrine

Amerijet need not allege a direct challenge to the Security Directive to fall within the ambit of § 46110(a)'s exclusive jurisdiction scheme.  Rather, the "inescapable-intertwinement doctrine gives the courts of appeals jurisdiction over not only direct challenges to final agency orders [under § 46110(a)] but also any claims inescapably intertwined with the review of those orders."  *Durso v. Napolitano*, 795 F. Supp. 2d 63, 69 (D.D.C. 2011) (citing *Breen v. Peters*, 474 F. Supp. 2d 1, 4 (D.D.C. 2007)).  "The doctrine serves to prevent plaintiffs from collaterally attacking agency proceedings by presenting ostensibly independent claims."  *Id*. at 69-70 (citing

*Americopters, LLC v. FAA*, 441 F.3d 726, 736 (9th Cir. 2006)). "In the inescapable-intertwinement inquiry, a 'critical point' is whether review of the order by a court of appeals would allow for adjudication of the plaintiff's claims and could result in the relief that the plaintiff requests." *Id*. at 70 (quoting *Breen*, 474 F. Supp. 2d at 5).

Although the exact boundaries are somewhat murky, the breadth of the inescapable-intertwinement doctrine, as applied to § 46110(a), stops short of preventing a district court from reviewing "broad facial challenges" to a TSA order; it does prohibit, however, a district court from hearing "as-applied challenges" in which the plaintiff seeks review of the procedures and merits of an order. *Gilmore v. Gonzales*, 435 F.3d 1125, 1133 n.9 (9th Cir. 2006); *see also Thomson v. Stone*, No. 05-CV-70825, 2006 WL 770449, at *4 (E.D. Mich. Mar. 27, 2006) ("If the claim raises broad constitutional challenges which do not require a review of the procedures, then the district court has subject[] matter jurisdiction to consider the constitutional challenges." (citation and quotation omitted)).

That a plaintiff describes its claims before a district court as constitutional challenges to agency action does not guarantee avoidance of § 46110(a)'s grant of exclusive jurisdiction because such claims quite often remain inescapably intertwined with the TSA order at issue. *See*, *e.g.*, *Gilmore*, 435 F.3d at 1133 n.9 (finding that the plaintiff's due process vagueness and right to travel claims are "inescapably intertwined" with review of a TSA order); *Nelson v. DHS*, No. 06–0050, 2007 WL 1655344, at *2 (W.D. Va. June 7, 2007) (finding that the district court lacks jurisdiction to hear the plaintiff's constitutional challenge to a TSA order requiring the fingerprinting of persons seeking a driver's license to transport hazardous materials); *Thomson*, 2006 WL 770449, at *6 (finding that the district court lacks jurisdiction because the plaintiff's Fourth Amendment claim is inescapably intertwined with a review of the TSA's orders regarding

airport screening procedures); *Green v. TSA*, 351 F. Supp. 2d 1119, 1127 (W.D. Wash. 2005) (finding that the district court lacks jurisdiction because the plaintiffs' Fourth and Fifth Amendment challenges to the TSA's No-Fly List are "inescapably intertwined with a review of the procedures and merits surrounding the adoption of the No-Fly List").

2.  A Request For Declaratory And Injunctive Relief Does Not Remove Claims From § 46110(a)

Pursuant to § 46110(c), a court of appeals reviewing a final TSA order has authority to "affirm, amend, modify, or set aside any part of the order." 49 U.S.C. § 46110(c). Although relief under the Declaratory Judgment Act, which this Court could apply if it had subject matter jurisdiction, differs from the statutory relief available from a court of appeals under § 46110(c), this Court has previously concluded that the distinction in remedies is insufficient to displace Congress's exclusive-review scheme and the inescapable-intertwinement doctrine. *See Durso v. Napolitano*, 795 F. Supp. 2d 63, 70-71 (D.D.C. 2011) ("The question remains … whether this distinction [in remedies] is sufficient to place this case beyond the reach of the inescapable-intertwinement doctrine. The Court concludes that it is not…. If a plaintiff could proceed in the district court merely by asking for an injunction barring the agency from taking the action required by the order in question, then that purpose would be defeated." (citation omitted)). As such, Amerijet's request for declaratory and injunctive relief from this Court does not require a different analysis under § 46110(a).

3.  The Gravamen Of Amerijet's Claims

The Court next must consider the factual content of Amerijet's complaints. A plaintiff may not "avoid the bar of a clearly applicable jurisdictional statute" simply by "drafting an artfully worded complaint." *United Transp. Union v. Norfolk & W. Ry. Co.*, 822 F.2d 1114, 1120 (D.C. Cir. 1987). Instead, the Court must look to the gravamen of Amerijet's claims to

determine whether the plaintiff is asserting a broad challenge to the TSA's actions, or if Amerijet merely is attempting to circumvent § 46110(a) by erroneously describing its real effort to seek collateral review of the procedures and merits surrounding the TSA's implementation and enforcement of the Security Directive.  *See Mohamed v. Holder*, No. 1:11-CV-50, 2011 WL 3820711, at *6 (E.D. Va. Aug. 26, 2011) ("The applicability of Section 46110 is to be judged by reference to the substance of plaintiff's claims, not his characterization of those claims as something other than the review of a TSA order." (citation omitted)).

Amerijet describes its Complaint as alleging "a pattern or practice of conduct by Defendants in connection with a series of TSA investigations, alternative procedure requests and information requests pursuant to regulation, and preliminary enforcement proceedings from early 2012 and continuing as of the filing of this action."  Pl.'s Mem. in Opp'n, ECF No. 19-1, at 1. The plaintiff continues that "[t]he pattern of conduct complained of does not concern or relate to any particular individual formal civil penalty proceeding that Amerijet could contest before an administrative law judge and appeal to the U.S. Court of Appeals under 49 U.S.C. § 46110," and "[i]t does not concern any particular final order of Defendants otherwise reviewable in the U.S. Court of Appeals under 49 U.S.C. § 46110."  *Id*.

Although in theory the various investigations and enforcement proceedings from the late 2011 Caribbean inspection onward could involve an unlawful pattern of conduct by the TSA, the Court finds that the proffered combination of alleged actions by the TSA is inadequate to remove Amerijet's claims from § 46110(a)'s exclusive jurisdiction scheme.  Rather, as is discussed in more detail below, Amerijet's claims effectively involve just two basic challenges, both of which would require this Court to review the procedures and merits of the TSA's interpretation, implementation, and enforcement of the Security Directive.  *See Gilmore v. Gonzales*, 435 F.3d

1125, 1133 n.9 (9th Cir. 2006) (finding that "the district court [was] divested of jurisdiction" because the plaintiff's constitutional challenges were "inescapably intertwined with a review of the procedures and merits surrounding the … order" (citation and quotation omitted; alternation in original)); *Green v. Brantley*, 981 F.2d 514, 521 (11th Cir. 1993) (finding that the district court lacked jurisdiction under 49 U.S.C. App. § 1486 — the precursor to § 46110(a) — when the merits of the plaintiff's *Bivens* claims were "inescapably intertwined" with an FAA order rescinding his Designated Pilot Examiner certificate because consideration of the claims required review of the merits and procedures surrounding the order). Because jurisdiction for such a review is vested exclusively with the courts of appeals, this Court cannot hear Amerijet's claims.

a. *Amerijet's Challenge To The TSA's Interpretation, Implementation, And Enforcement Of The Security Directive And Its Exemption Criteria*

Amerijet's first challenge deals with the TSA's allegedly wrongful failure to agree with Amerijet's interpretation that it is exempt from the Security Directive's cargo screening requirements. *See* Compl., ECF No. 1, at ¶ 35. The disagreement about whether Amerijet is exempt sparked a variety of TSA enforcement actions, starting with a letter of investigation following the late 2011 Caribbean inspection in which Amerijet was found in noncompliance with the Security Directive. *Id.* ¶ 34. Amerijet continued to disagree with the TSA's interpretation and implementation of the Security Directive's exemption requirements, which led to the Notice of Proposed Civil Penalty in November 2012, *id.* ¶¶ 44-46, then to the December 2012 informal conference, *id.* ¶ 44, and later to the Final Notice of Proposed Civil Penalty and Order. *Id.* ¶ 79. Amerijet subsequently requested a formal administrative proceeding, which is ongoing, regarding the initial issue of whether it is entitled to a blanket exemption from the cargo screening procedures set forth in the Security Directive. *Id.* ¶¶ 80-82.

In the meantime, the TSA continued to inspect various other Amerijet locations in the Caribbean and Latin America, during which the agency uncovered additional instances of noncompliance by Amerijet with the Security Directive's requirement of full direct physical screening of all-cargo aircraft bound for the United States. *Id.* ¶¶ 58-59. In each case, Amerijet received a letter of investigation for its noncompliance with the TSA requirements, to which Amerijet continued to respond that it was in compliance with the Security Directive because, in its interpretation, it qualified for certain exemptions — an interpretation the TSA never shared. Compl., ECF No. 1, at ¶ 61.

Thus, each time Amerijet remonstrates in the Complaint about some aspect of the TSA's enforcement activities — regardless if that challenge is described as a constitutional or APA claim — it is attacking the procedures and merits of the agency's interpretation, implementation, and enforcement of the Security Directive (including who is exempt from the directive), as that was clearly the main source of disagreement between Amerijet and the TSA, and the primary regulation under which the agency was acting during the relevant events.

Accordingly, when Amerijet complains about a lack of notice regarding the bases of its violations in letters of correction, it is asking for review of the TSA's procedures for enforcing the Security Directive. *See* Pl.'s Mem. in Opp'n, ECF No. 19-1, at 2. The same is true when Amerijet complains about the TSA's failure to supply the operator with notice of specific statutes or rules it violated in connection with preliminary enforcement proceedings initiated by a Notice of Proposed Civil Penalty. *Id.* Likewise, when Amerijet complains that the TSA conducted enforcement proceedings "to coerce in bad faith the acquiescence of foreign sovereign nations to TSA jurisdiction and oversight," the plaintiff is seeking review of the TSA's implementation and enforcement of the Security Directive, as that is the basis for the allegedly wrongful enforcement

actions at issue. *Id.* at 2-3. And when Amerijet complains that the TSA "knowingly permitted" the operator's competitors to disregard the full direct physical screening requirement for all-cargo aircraft but enforced that requirement against Amerijet, the plaintiff's Equal Protection claim is seeking review of the merits and procedures surrounding the TSA's enforcement of the Security Directive, which is the regulation imposing the complained-about procedures. *Id.* at 3; Compl., ECF No. 1, at ¶¶ 87-88, 98.

   *b. Amerijet's Challenge To The TSA's Denial Of Its Applications For Alternate Procedures*

   Amerijet's second complained-about topic is the TSA's continued refusal to approve the proposed alternate procedures when Amerijet sought an exemption from the Security Directive. *See* Compl., ECF No. 1, at ¶¶ 54-55. In December 2012, the TSA asked Amerijet to apply for alternative procedures to avoid further violations of the Security Directive, as is permitted under the regulatory scheme. *Id.* ¶ 54. In February 2013, Amerijet submitted an application for alternative procedures, *id.* ¶ 55, which the TSA denied in May 2013. *Id.* ¶ 68. Amerijet eventually petitioned the U.S. Court of Appeals for the District of Columbia Circuit to review the TSA's denial of that request. *See Amerijet Int'l, Inc. v. John Pistole*, No. 13-1176 (D.C. Cir. filed May 15, 2013); *see also* Defs.' Mem. in Supp., ECF No. 15-1, at 15.

   Following the TSA's denial of the proposed alternate procedures in May 2013, Amerijet applied for an extension of its two existing alternative procedures under the Security Directive, which the TSA had granted back in July 2011. *See* Compl., ECF No. 1, at ¶¶ 32, 68. In July 2013, the TSA denied Amerijet's application for an extension at each of the locations in which Amerijet was previously found in noncompliance with the Security Directive during an inspection. *Id.* ¶ 71. At the TSA's request, Amerijet submitted another application for alternate

procedures in August 2013, which the TSA has yet to approve or deny. *See id.* ¶ 73; Defs.'
Mem. in Supp., ECF No. 15-1, at 16 n.5.

Thus, when Amerijet complains about the TSA's failure to approve its applications for
alternate procedures, it plainly is seeking review of the TSA's implementation, interpretation,
and enforcement of the Security Directive, as that is the order under which the alternative
procedures would be granted. The same is true for Amerijet's complaint that the TSA approved
alternate procedures for its competitors in violation of the Equal Protection Clause. *See* Compl.,
ECF No. 1, at ¶¶ 89, 97. A court may evaluate such challenges only by closely reviewing the
procedures and merits of the TSA's actions in connection with the Security Directive.

### 4. Amerijet's Claims Are Within The Scope Of § 46110(a)

Although cumbersome, a close factual review was necessary because it demonstrates that
what Amerijet describes as a "pattern or practice" of wrongful conduct in violation of the
Constitution and the APA, *see* Compl., ECF No. 1, at ¶¶ 97, 109, is really a disguised attack on
the TSA's interpretation, implementation, and enforcement of the Security Directive — not a
separate and collateral attack on agency action. *See Mohamed v. Holder*, No. 1:11-CV-50, 2011
WL 3820711, *6 (E.D. Va. Aug. 26, 2011) ("[T]he Court must decide … whether [the
plaintiff's] challenges are so related to the challenge of a TSA order that they are within the
scope of Section 46110 or whether plaintiff has alleged a sufficiently independent cognizable
injury, separate and apart from any TSA order that may relate to or issue out of the challenged
conduct.").

For this Court to determine whether the TSA has acted in violation of its statutory
authority or the Constitution, it would have to evaluate how the agency acted in regard to
applying the Security Directive specifically to Amerijet. This would require, among other

things, a detailed factual review of Amerijet's alleged instances of noncompliance, the merits

and procedures of each TSA enforcement action, how the TSA interpreted and applied the

Security Directive's exemption criteria, and how the TSA evaluated applications for alternative

procedures by Amerijet and its competitors.  *See*, *e.g.*, *Jones v. United States*, 625 F.3d 827, 830

(5th Cir. 2010) (finding that the district court lacked jurisdiction under § 46110(a) when the

complaint alleged "procedural improprieties" by the FAA, challenged the "merits" of an FAA

order, and required "evaluating whether the FAA had a legitimate reason for denying [the

plaintiff's] application" because hearing such a claim would require a "balancing of the same

evidence that the FAA had weighed" when issuing the order); *Parker v. NTSB*, No. 98-17173,

2000 WL 1099652, at *1 (9th Cir. Aug. 7, 2000) (finding that the district court lacked

jurisdiction under § 46110(a) when the plaintiff did "not broadly challenge the constitutionality

of the FAA's action," and instead the "challenge [was] specific to the notice he received and []

inescapably intertwined with the procedures surrounding the FAA's order"); *Green v. Brantley*,

981 F.2d 514, 521 (11th Cir. 1993) (finding that the district court lacked jurisdiction under 49

U.S.C. App. § 1486 — the precursor to § 46110(a) — because the merits of the plaintiff's *Bivens*

claims were "inescapably intertwined with a review of the procedures and merits surrounding the

FAA's order"); *Thomson v. Stone*, No. 05-CV-70825, 2006 WL 770449, *6 (E.D. Mich. Mar. 27,

2006) (finding that the district court lacked jurisdiction under § 46110(a) "[t]o determine

whether the procedures performed by the [TSA] screeners on Plaintiff in the past and to

determine whether Plaintiff's injunctive relief regarding the procedures violate[d] Plaintiff's

Fourth Amendment rights" because to do so would "necessarily require a review of the statutes,

regulations, policies, procedures and programs established by the TSA to screen all

individuals").

Accordingly, Amerijet sets forth nothing more than an "as-applied" challenge to the Security Directive, which, even if not a direct attack on the order itself, is clearly inescapably intertwined with a review of that order.[10] *See Gilmore v. Gonzales*, 435 F.3d 1125, 1133 n.9 (9th Cir. 2006) (finding that the plaintiff's constitutional challenges are "inescapably intertwined with a review of the procedures and merits surrounding the … order" (citation and quotation omitted; alternation in original)); *Mohamed*, 2011 WL 3820711, at *8 (concluding that the plaintiff's constitutional claims about having his name on the No-Fly List are "inescapably intertwined" with a TSA order because the alleged harm only occurred after issuance of the order).

These are exactly the types of claims that could be — and must be — heard by the courts of appeals under § 46110(a), assuming the other conditions for federal judicial review are met, such as final agency action and ripeness. *See Durso v. Napolitano*, 795 F. Supp. 2d 63, 69 (D.D.C. 2011) ("In the inescapable-intertwinement inquiry, a 'critical point' is whether review of the order by a court of appeals would allow for adjudication of the plaintiff's claims and could result in the relief that the plaintiff requests." (quoting *Breen v. Peters*, 474 F. Supp. 2d 1, 5 (D.D.C. 2007)). Indeed, if this Court was to entertain Amerijet's claims on the merits, it would be enabling the multi-forum, collateral litigation that Congress sought to prevent through § 46110(a). *See City of Rochester v. Bond*, 603 F.2d 927, 936 (D.C. Cir. 1979) ("The rationale for statutory review is that coherence and economy are best served if all suits pertaining to designated agency decisions are segregated in particular courts…. The policy behind having a special review procedure in the first place similarly disfavors bifurcating jurisdiction over

---

[10]     Because the Court concludes that Amerijet's claims are inescapably intertwined with the Security Directive, it need not determine whether Amerijet also is seeking direct review of that order.

various substantive grounds between district court and the court of appeals."). The Court

therefore lacks subject matter jurisdiction to hear the merits of this action.[11]

## C. *Thunder Basin Coal Co.* And Its Progeny Do Not Confer Subject Matter Jurisdiction On This Court

In its opposition to Defendants' motion to dismiss, Amerijet asserts that this Court has

subject matter jurisdiction pursuant to *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994),

and its progeny. *See* Pl.'s Mem. in Opp'n, ECF No. 19-1, at 6-8. Under *Thunder Basin Coal*,

district courts lack jurisdiction to review cases involving "delayed judicial review" schemes if

"Congress has allocated initial review to an administrative body where such intent is fairly

discernible in the statutory scheme." 510 U.S. at 207 (citation and quotation omitted). Courts

will "presume that Congress does not intend to limit jurisdiction if 'a finding of preclusion could

foreclose all meaningful judicial review'; if the suit is 'wholly collateral to a statute's review

provisions'; and if the claims are 'outside the agency's expertise.'" *Free Enter. Fund v. Pub. Co.*

---

[11] The Court is further convinced that it lacks subject matter jurisdiction because of statements made by Amerijet in its ongoing claim against the TSA before the U.S. Court of Appeals for the District of Columbia Circuit. In that matter, Amerijet asserts a similar Equal Protection claim against the TSA. In doing so, Amerijet argues that the court of appeals has jurisdiction over the constitutional challenge because "that claim is inescapably intertwined with review of TSA's informal adjudication decision" denying Amerijet's request for alternative means for compliance with the Security Directive. *See* Petitioner's Final Opening Brief, *Amerijet Int'l, Inc. v. Pistole*, Case No. 13-1176, at 3-4 (D.C. Cir. filed May 15, 2013).

Likely recognizing the inconsistency of its positions in the two forums, Amerijet attempts to constrain its court of appeals argument through a footnote distinguishing the informal adjudication Equal Protection claim from the Equal Protection challenge to the "notice and enforcement" of the TSA's security requirements now before this Court. *See id*. at 4 n.2. The Court disagrees that any meaningful distinction exists. Instead, Amerijet's theory that it is being subjected to disparate treatment by the TSA's interpretation and application of the Security Directive through the informal adjudication regarding alternative procedures applies equally to its Equal Protection and APA complaints in this pending action — including the TSA's interpretation that Amerijet does not qualify for an exemption under the Security Directive and the related TSA enforcement actions against Amerijet for noncompliance with that directive.

*Accounting Oversight Bd.*, 130 S. Ct. 3138, 3150 (2010) (quoting *Thunder Basin Coal*, 510 U.S. at 212-13).

Here, it is clear that Congress, through § 46110(a), intended to grant courts of appeals exclusive review of certain final agency actions related to aviation security. Indeed, another federal court previously considered § 46110(a) under one of *Thunder Basin Coal*'s progeny, *Elgin v. Dep't of Treasury*, 132 S. Ct. 2126 (2012), and explained:

> To determine whether it is "fairly discernible" that Congress intended to bar the district court from exercising jurisdiction in this proceeding, *Elgin* directs us to examine the text, structure, and purpose of § 46110. In so doing, we have no reason to look beyond the plain text of the statute, in which Congress clearly expressed its intention that any legal challenge to a § 46110 order … be brought in the first instance in a court of appeals.

*Blitz v. Napolitano*, 700 F.3d 733, 740 (4th Cir. 2012). Further, under the *Thunder Basin Coal* analysis, Amerijet's claims are not wholly collateral from a TSA order because they are inescapably intertwined with review of the agency's interpretation, implementation, and enforcement of the Security Directive, as was discussed above. Amerijet's challenges also are soundly within the TSA's expertise, and Amerijet does not lack meaningful judicial review because it may challenge a final agency action in the courts of appeals following consummation of the administrative process. *See id.* at 742 ("[Section] 46110 does not deprive the Plaintiffs of meaningful judicial review." (citation omitted)). In fact, Amerijet has done just that through its court of appeals petition challenging the TSA's denial of its application for alternate screening procedures. *See* Petitioner's Final Opening Brief, *Amerijet Int'l, Inc. v. Pistole*, Case No. 13-1176, at 2 (D.C. Cir. filed May 15, 2013). Accordingly, the Court finds that Amerijet's argument is without merit.

**D.  Whether To Transfer The Case Under 28 U.S.C. § 1631**

Finally, when a federal district court concludes that it lacks subject matter jurisdiction, the court "only has the authority to make a single decision: to dismiss the case, or in the interest of justice, to transfer it to another court" pursuant to 28 U.S.C. § 1631.[12]  *Boultinghouse v. Lappin*, 816 F. Supp. 2d 107, 112-13 (D.D.C. 2011) (citations, quotations, and internal alterations omitted).  In a footnote to its opposition brief, Amerijet suggests that Defendants should agree to the transfer of these claims to the U.S. Court of Appeals for the District of Columbia Circuit.  Pl.'s Mem. in Opp'n, ECF No. 19-1, at 3 n.1.  Defendants firmly reject Amerijet's proposition, arguing instead that dismissal of the claims is the proper disposition.  Defs.' Reply, Jan. 21, 2014, ECF No. 20, at 13-15.

Although Amerijet has made no motion requesting a transfer under § 1631, it remains within this Court's discretion to transfer an action *sua sponte*.  *See Halim v. Donovan*, 951 F. Supp. 2d 201, 204 (D.D.C. 2013) ("While a Court may on its own initiative transfer an action under 28 U.S.C. § 1631, the law of this Circuit also holds that *sua sponte* transfers pursuant to 28 U.S.C. § 1631 are committed to the discretion of the District Court where no party has moved to transfer a case brought in the wrong jurisdiction." (citations, quotations, and internal alterations omitted)).

Here, the Court finds that "it is in the interest of justice" to transfer this action to the U.S. Court of Appeals for the District of Columbia Circuit.  *See* 28 U.S.C. § 1631.  Pending before that court is a petition seeking review of the TSA's denial of Amerijet's request for alternative

---

[12]  28 U.S.C. § 1631 states, in relevant part:

Whenever a civil action is filed in a court as defined in section 610 of this title … and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed[.]

procedures under the Security Directive.  *See Amerijet Int'l, Inc. v. John Pistole*, Case No. 13-1176 (D.C. Cir. filed May 15, 2013).  In hearing Amerijet's petition, the court of appeals will evaluate factual, legal, and procedural issues markedly similar to those raised in Amerijet's action pending before this Court.  Principles of justice, judicial economy, and uniformity therefore suggest that the court of appeals is the proper forum to address Amerijet's interrelated challenges to the TSA's actions and the Security Directive.  The Court therefore concludes that transfer, not dismissal, is the preferable disposition.

## VI.  CONCLUSION

For the foregoing reasons, Defendants' Motion is granted, and this action is transferred to the U.S. Court of Appeals for the District of Columbia Circuit pursuant to 28 U.S.C. § 1631.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated:  May 22, 2014                                    RUDOLPH CONTRERAS
                                                        United States District Judge